Filed 2/26/26  P. v. Medrano CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANSONY EDUARDO MEDRANO,<br><br>    Defendant and Appellant. | B338690<br><br>(Los Angeles County<br>Super. Ct. No. VA125275) |

APPEAL from an order of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed.

Mher Cholakhyan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Lauren Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

Ansony Eduardo Medrano appeals from the trial court's order denying his motion to vacate his conviction under Penal Code section 1473.7.[1]  In 2013, Medrano entered a plea of no contest to one count of transportation of a controlled substance in violation of Health and Safety Code section 11379, subdivision (a).  On appeal, Medrano argues he did not meaningfully understand the consequences of his plea.  We conclude Medrano has failed to establish that any error in his understanding of the immigration consequences of the plea was prejudicial.  Accordingly, we affirm the denial of Medrano's motion to vacate his conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Plea

In June 2012, Los Angeles County Sheriff deputies stopped Medrano for a traffic violation.  They found 54.7 grams of methamphetamine and $1,146 in cash in his car.  In a March 2013 information, Medrano was charged with possession of a controlled substance, methamphetamine, for sale (Health & Saf. Code, § 11378; count 1); transportation of a controlled substance (*id*., § 11379, subd. (a); count 2); and driving without a license (Veh. Code, § 12500, subd. (a); count 3).

In July 2013, Medrano pled no contest to transportation of a controlled substance.  (Health & Saf. Code, § 11379, subd. (a).)  At the beginning of the hearing, Medrano's attorney told the court: "There is a change of plea.  If you recall, an offer was made last time by the People.  We had to check what the immigration consequences were.  The offer was originally plea to count 1.

---

[1]     Undesignated statutory references are to the Penal Code.

2

Count 1 is not acceptable I guess for immigration purposes. The second one, it's much better so long as it's transportation of a controlled substance. Nothing possession for sale."

The prosecutor then indicated that the three charges carried a maximum sentence of four years and eight months, but that if Medrano accepted a plea to count 2, the People would ask the court to sentence Medrano to time served and place Medrano on probation.

After the prosecutor questioned Medrano as to whether he understood the charges, his possible defense, and the plea, he stated: "It's our position that if you plead to this case—this charge today you are going to be deported from the country, you are not going to be allowed to return—so there's no right to reentry and there's no right to citizenship. You will not become a citizen ever in this country. [¶] Do you understand the immigration consequences, Mr. Medrano?"

Medrano replied: "I understand what you're telling me, but I don't understand it completely." The prosecutor responded: "So our position is you're going to be deported from the country. Now, if you go and get an immigration law attorney and you go fight it over there, look, whatever happens over there with the feds, that's on them. But for our position—if you come back later and say none of us told you [that] you were going to get deported, I'm going to you [*sic*] pull the record where I've told you and this court confirms you're going to be deported. Okay. But whatever happens over there, that's between you guys. [¶] Do you understand that?" Medrano answered, "Yes."

The court also questioned Medrano, stating: "I want to make sure you're absolutely certain. Okay? The consequence of this plea—you're going to get deported. Okay? You are going to

get deported. I can't tell you anything else. [¶] I don't know what's going to happen, like [the prosecutor] says, what the federal government will do. You have to assume you will be deported as a result of this case. You'll be denied naturalization. You'll be denied reentry. You have to assume that. [¶] If you get deported after this because of this case, I can't have you coming back here saying, well, you know, they told me that, but I kind of had [it] in my mind I wasn't going to get deported. They were going to do something for me. You can't assume that. You have to assume if I'm going to accept this plea that you're going to get deported. [¶] Do you understand that?

Medrano replied: "Yes. I understand what you're saying, but I have no other option."

The court explained Medrano had the option of going to trial, but advised he would likely go to prison because it was alleged that he had "a lot of methamphetamine." The court then stated it did not want Medrano to "misunderstand," and reiterated that "as a result of this case you're going to get deported. [¶] Do you understand that consequence?"

Medrano responded: "And I also know that I will probably have the consequence of going to jail, and I don't want that. And I want you to understand that I'm doing this because I think it's better."

The court replied: "Do you understand the consequence? I'm confident you've gone through this with your attorney, okay? I need to make sure, okay? I can't have you come to me after the fact, well, I didn't really know. You need to understand this is what is going to happen." Medrano said: "I understand."

Medrano then pled no contest. He also signed a felony advisement of rights, waiver, and plea form, which included an

4

advisement that his plea "will result in . . . deportation, exclusion from admission or reentry to the United States, and denial of naturalization or amnesty." The waiver also stated that he had the opportunity to discuss the consequences of his plea with his counsel. Medrano's trial attorney further certified that he had discussed the consequences of the plea with Medrano.

The court found Medrano expressly, knowingly, and intelligently waived his rights. It suspended imposition of sentence and placed Medrano on formal probation for a three-year period.

### Section 1473.7 Motion

In November 2020, Medrano, through private counsel, filed a motion to vacate his conviction pursuant to section 1473.7. In May 2021, the trial court called the matter for a hearing and indicated Medrano's attorney had been suspended from the practice of law. The court took the matter off calendar. At a later hearing, Medrano requested the appointment of counsel, explaining that he does "messengering" and "deliveries" for a living and could not afford an attorney.

The trial court appointed counsel. In July 2021, newly appointed defense counsel requested, and the trial court granted, a continuance. Counsel explained that she had not yet been able to obtain Medrano's file from his prior section 1473.7 counsel or from trial counsel.

In November 2022, the defense filed a second motion to vacate Medrano's conviction under section 1473.7. Medrano argued his trial attorney never advised him of the immigration consequences of his plea and that if he had known of the

consequences, he would not have accepted it.[2]  Defense counsel submitted a declaration in support of the motion indicating: Medrano entered the United States in 2000 at the age of 20; he obtained "employment authorization" in the United States; "this matter is his only felony complaint to date"; at the time of the plea he "was not made aware of the potential immigration consequences" and his counsel did not tell him that his plea "could potentially jeopardize his status in the United States"; his attorney did not tell him the conviction would make him deportable; had he known the plea would lead to removal proceedings he would not have accepted it; he completed probation; he obtained a GED and "has maintained gainful employment"; he does not have "close" relatives or friends in his birth country and immigration attorneys advised him he could face "potential deportation" based on his conviction.

The People countered that the record established that Medrano's trial attorney, the prosecutor, and the trial court informed Medrano of the consequences of his plea and he knowingly, intelligently, and voluntarily entered the plea.

---

[2]     Although three sentences of the motion cited to a declaration from Medrano, no such declaration is included in the record on appeal.  The motion stated: "Mr. Medrano will attest that he would not have [pled] guilty to the HSC § 11379(A) charge had he known that doing so would lead to his deportation. (Medrano Decl. ¶ 15).  He will state that it was not until after the conviction that he was made aware of the severe consequences of his plea to the crime and how it could be a crime involving a federally defined controlled substance.  (*Id*. ¶ 14).  Had he understood that the plea would lead to deportation, he would not have accepted the plea and would have explored alternative options to avoid any immigration consequences.  (*Id*. ¶16)."

6

At a June 2024 hearing, Medrano testified that at the time of his plea, he had been in the United States for 13 years. He did not have a conversation with his trial attorney regarding the plea, and the attorney did not advise him of the immigration consequences of his plea in advance of the plea hearing. When asked what trial counsel explained to him, Medrano said the attorney told him that if he did not plead guilty, the attorney would no longer represent him. Medrano had paid the attorney $10,000 up to that point, and the attorney required approximately $15,000 more to continue the representation.

Defense counsel attempted to submit a letter that Medrano's trial counsel sent to him around the time of his plea. The court sustained the People's hearsay objection to the letter. Defense counsel then questioned Medrano regarding his understanding of the information contained in the letter. Medrano testified that he understood that by accepting the plea he would not get jail time. Defense counsel argued that the trial attorney did not specifically advise Medrano of the immigration consequences of the plea.

The trial court stated it had reviewed the plea transcript, the abstract of judgment, "the waiver form, the *Tahl* waiver form[,] and the remainder of the court file." The court concluded Medrano "could not have been advised more thoroughly of the immigration consequences," and he had his questions answered after he was "at some point reluctant." The court additionally observed that both the prosecutor and court had "thoroughly re-advised [Medrano]" of the consequences of his plea. The court thus concluded Medrano was adequately advised and did not misunderstand the consequences of the plea.

Medrano filed a timely notice of appeal.

7

## DISCUSSION

### I. Section 1473.7 and Standard of Review

Pursuant to section 1473.7, "[a] person who is no longer in criminal custody may file a motion to vacate a conviction or sentence" if "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (*Id.*, subd. (a)(1).) A court shall "grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of . . . [such] grounds for relief . . . ." (*Id.*, subd. (f)(1).)

"To prevail on a motion under section 1473.7, a defendant must satisfy two elements." (*People v. Curiel* (2023) 92 Cal.App.5th 1160, 1172 (*Curiel*).) "The defendant must first show that he did not meaningfully understand the immigration consequences of his plea." (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*).)[3] "The focus of this inquiry is the defendant's own error." (*People v. Carrillo* (2024) 101 Cal.App.5th 1, 16; *People v. Alatorre* (2021) 70 Cal.App.5th 747, 769 (*Alatorre*).)

"Next, the defendant must show that his misunderstanding constituted prejudicial error. '[P]rejudicial error . . . means

---

[3] The issue of when the totality of the circumstances establishes a defendant meaningfully understood the immigration consequences of a plea is currently pending before the California Supreme Court in *In re Hernandez*, S282186, Supreme Court Minutes, December 20, 2023.

8

demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.' [Citation.]" (*Espinoza*, *supra*, 14 Cal.5th at p. 319.) "When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances." (*People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*).) A defendant must provide objective evidence to corroborate his assertions that he never would have entered his plea if he had understood the immigration consequences. (*Espinoza*, at p. 316; *Vivar*, at p. 529.)

We independently review the denial of a section 1473.7 motion. (*Vivar*, *supra*, 11 Cal.5th at p. 527; accord, *Espinoza*, *supra*, 14 Cal.5th at p. 319.) In doing so, we "give particular deference to factual findings based on the trial court's personal observations of witnesses." (*Vivar*, at pp. 527–528.) However, "[w]here . . . the facts derive entirely from written declarations and other documents . . . there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.] Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id.*, at p. 528, fn. omitted.)

## II.    Medrano Has Not Established Prejudicial Error

It is undisputed that Medrano's conviction renders him deportable and carries other immigration consequences. (See 8 U.S.C. § 1227(a)(2)(B)(i).) Medrano also contends he has sufficiently established that he misunderstood the consequences

of his plea.  However, even assuming Medrano did not have an accurate understanding of the consequences of his plea, we conclude he has not established prejudice through objective evidence that he would have rejected the plea if he had correctly understood its actual or potential immigration consequences.

"Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar*, *supra*, 11 Cal.5th at pp. 529–530.)

"Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial.  [Citation.]  These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*Espinoza, supra*, 14 Cal.5th at pp. 320–321.)  "Objective evidence" to support a showing of prejudice "includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Id*. at p. 321.)

Medrano presented evidence that he entered the United States at the age of 20 and had lived in the United States for approximately 13 years at the time of his plea; he had obtained employment authorization and was employed; he had earned his GED; and his own statement that he has no "close" relatives or friends in his birth country.

This is significantly less substantial than evidence our high court and other appellate courts have found demonstrated

10

prejudice. For example, in *Vivar*, the court held that the defendant's significant ties to the United States were a critical factor in establishing prejudice because he "was brought to this country at age six as a lawful resident, and he attended schools, formed a family, and remained here for 40 years. At the time of his plea, he had two children, two grandchildren, and a wife, all of whom are citizens and all of whom resided in California. By the time he was deported, his wife was undergoing radiation treatment for a thyroid condition." (*Vivar*, *supra*, 11 Cal.5th at p. 530.) There was also evidence in *Vivar* that the defendant "spoke Spanish 'like an American,' and found it 'difficult to function in Mexican society because people treat [him] like an outsider.' " (*Ibid*.) Thus, the defendant had objective evidence of his ties to the United States and that he would have faced a difficult life in his home country. This "convey[ed] how [he] would have considered his immigration status 'the most important part' of his decision to plead." (*Ibid*.)

In *Espinoza*, our high court found the defendant established prejudice because he had "spent most of his life in the United States. He came to California when he was 13 years old. At the time of the plea, Espinoza had lived in California for 23 years. His wife and five children were United States citizens. His parents and siblings lived in the United States. He was the financial provider for his family. As Espinoza puts it, '[e]verything important in his life' at the time he entered his plea 'was in the United States.' " (*Espinoza*, *supra*, 14 Cal.5th at p. 322.) In *Espinoza*, there was further proof that the defendant's "community ties were important to him at the time of his plea." (*Id*. at p. 323.) After his plea and related jail time, the defendant "returned home to care for his family and community. He became

11

the caregiver for his elderly parents who suffer from severe medical conditions. He ran his own business to provide for his family. He volunteered, went to church, and took part in numerous community organizations." (*Ibid*.; see also *Curiel*, *supra*, 92 Cal.App.5th at pp. 1178–1179 [defendant immigrated at 14 and had been in the United States for almost 20 years at the time of the plea; her husband was a lawful permanent resident; she had six children who are citizens and were born before she entered the plea, including six-month-old twins; defendant's mother and siblings are all lawful residents]; *Alatorre*, *supra*, 70 Cal.App.5th at p. 771 [defendant came to United States as a preschooler; all of his family lived in United States; married to citizen with two children who are also citizens].)

Unlike the defendants in *Vivar* and *Espinoza*, Medrano did not arrive in the United States as a child, and he did not present any evidence of family or other community ties to the United States either at the time of the plea or after. Medrano's ties to the United States do not support a finding of prejudice.

Next, aside from trial counsel's rejection of the prosecution's original plea offer on immigration grounds, there is no evidence that Medrano placed any importance on avoiding deportation. Rather, after multiple advisements from the prosecutor and the trial court that he would be deported, and when told he could go to trial rather than take the plea, he replied: "I also know that [if I go to trial] I will probably have the consequence of going to jail, and I don't want that. *And I want you to understand that I'm doing this because I think it's better.*" (Italics added.) His statement at the plea hearing indicates his priority in seeking the plea bargain was primarily avoiding

imprisonment.[4]  He also did not provide any evidence that he had a particular fear of deportation due to an inability to function in his unidentified country of origin, or a fear of persecution. Instead, he asserted only that he lacks close family and friends in that country.  (Cf. *Vivar, supra,* 11 Cal.5th at p. 530; *People v. Padron* (2025) 109 Cal.App.5th 950, 963 [defendant had "no connection to Cuba, where he experienced persecution" and record showed he "would have highly prioritized avoiding deportation to his home country of Cuba"].)

Further, Medrano has not established that an immigration safe plea was reasonably obtainable.  (Cf. *Vivar, supra,* 11 Cal.5th at p. 531 [record showed that defendant "could have entered a plea avoiding mandatory deportation"].)  On appeal, Medrano suggests that "an immigration-neutral disposition often involves pleading to a non-drug offense such as [section] 32," or that "pretrial diversion could be another valuable option to consider."  Yet, he did not make this argument in the trial court and did not provide a declaration from immigration counsel or anyone else establishing that there were immigration safe alternatives likely available to him.  (Cf. *Espinoza, supra,* 14 Cal.5th at p. 325 [finding prejudice where defendant lacked criminal history at time of plea and submitted an "immigration

---

4       Medrano's reply brief purports to cite his declaration for the statement: "If I had known that I was going to be deported because of this conviction, I would not have accepted the plea.  I would have wanted to explore other options."  However, the record citation provided in the reply is to a minute order, not a declaration.  In any event, this conclusory statement would not show prejudice, which requires a defendant to corroborate such assertions with objective evidence.  (*Espinoza, supra,* 14 Cal.5th at p. 316.)

attorney's declaration identifying alternative immigration-safe dispositions"].)

Moreover, there is evidence that trial counsel considered the immigration consequences of the plea, and this plea was the best offer. Trial counsel informed the court: "There is a change of plea. If you recall, an offer was made last time by the People. We had to check what the immigration consequences were. The offer was originally plea to count 1. Count 1 is not acceptable . . . for immigration purposes." Medrano argues this "clearly indicates immigration consequences were already a factor in negotiations." We agree. This suggests that trial counsel, by obtaining a more favorable immigration plea, did as much as he could, and an entirely immigration-neutral plea was not possible.

Medrano also did not provide any evidence regarding the probability that he would have obtained a more favorable outcome had he rejected the plea. He provides no evidence that the prosecution's case was weak or that he was otherwise likely to prevail at trial. The trial court indicated Medrano was caught with a large amount of methamphetamine and would face incarceration if he were convicted. The charges carried a maximum sentence of four years and eight months, but Medrano was released on probation because of the plea. Medrano had expressly stated that he wanted to avoid jail time. Thus, the record does not suggest Medrano was likely to have rejected the plea if he accurately understood the adverse immigration consequences.

Medrano contends his testimony that he could not afford his private trial attorney's continued representation suggests his acceptance of the plea "was influenced by a perceived lack of ongoing representation if he did not accept the deal." However,

14

even if this testimony, provided years later, was credited, it does not tend to show that Medrano would have rejected the plea had he understood the immigration consequences.

Considering the totality of the circumstances, Medrano has not demonstrated a reasonable probability that he would have rejected the plea had he understood the actual or potential immigration consequences.

## DISPOSITION

The order denying Medrano's section 1473.7 motion is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

ADAMS, J.

We concur:

EGERTON, Acting P. J.

HANASONO, J.

15